**L.A. ADAMS; Johnnie Mae Adams; Margaret I. Baker; Gracie Moore, Plaintiffs–Appellants,**

v.

**MERRILL LYNCH PIERCE FENNER & SMITH, a corporation; Leo Roepke, an individual; Tom Busby, an individual, Defendants–Appellees.**

Nos. 85–2622, 87–2471 and 88–1797.

United States Court of Appeals, Tenth Circuit.

Oct. 31, 1989.

Submitted on the Briefs.*

Jack G. Bush, Gary R. Underwood, Alan E. Synar of Bush, Underwood & West, and Bush & Underwood, Oklahoma City, Okl., for plaintiffs-appellants.

Bruce W. Day, William B. Federman, Pamela D. McAllister, Rodney J. Heggy of Day & Timmons, and Day Hewett & Federman, Oklahoma City, Okl., for defendants-appellees Merrill Lynch Pierce Fenner & Smith, Inc. and Leo Roepke.

Before McKAY, SETH, and BRORBY, Circuit Judges.

BRORBY, Circuit Judge.

This case involves separate appeals of three orders of the district court compelling arbitration of claims arising under the Securities Act of 1933, the Securities Exchange Act of 1934, the securities laws of the State of Oklahoma, and common law fraud, breach of fiduciary duty, breach of contract, and negligent management. We affirm.

L.A. Adams, Johnnie Mae Adams, Margaret I. Baker, and Gracie Moore (Investors), engaged Merrill Lynch, Pierce, Fenner & Smith and its agents (Merrill Lynch) as their authorized broker-dealer in connection with the purchase and sale of securities and commodities. All of the Investors, except Gracie Moore, acknowledge executing a Standard Option Agreement,[1] which

contains an arbitration clause. The Standard Option Agreement reads in part:

> Any controversy between us arising out of such option transactions or this agreement shall be settled by arbitration only before the National Association of Security Dealers, Incorporated, or the New York Stock Exchange, or an Exchange located in the United States upon which listed options transactions are executed....

The Customer Agreement, signed by each investor, also contains an arbitration clause which reads as follows:

> It is agreed that any controversy between us arising out of your business or this agreement shall be submitted to arbitration conducted under the provisions of the Constitution and Rules of the Board of Governors of the New York Stock Exchange, Inc. or pursuant to the Code of Arbitration Procedure of the National Association of Securities Dealers, Inc., as the undersigned may elect....

Investors filed a lawsuit alleging that Merrill Lynch violated numerous federal securities laws by misrepresenting material facts, treating their accounts as if they were discretionary, broker-controlled accounts, and "churning" the accounts for the purpose of generating excessive commissions. The Complaint also alleged the aforementioned pendent state claims.

Merrill Lynch filed a motion to compel arbitration of the claims arising under the Securities Exchange Act of 1934 and of the state and common law claims, and a motion to stay the action until the completion of arbitration. By Order entered on September 20, 1985, the district court granted Merrill Lynch's motion to compel arbitration as to Investors' state and common law claims and denied the motion as to the federal claims. The district court further granted Merrill Lynch's motion to stay all

---

* Both parties having waived oral argument, this court has examined the briefs and appellate record, and the cause is ordered submitted without oral argument.

1. The district court found "Standard Option Agreements and general Customer Agreements,

each containing agreements to arbitrate controversies, were executed by plaintiffs as to four accounts which are the subject of this lawsuit." R.I, tab 44 at 1–2. On appeal, Investors do not argue this finding is clearly erroneous.

proceedings until arbitration was completed in accordance with the arbitration agreements at issue in the case. Investors appealed the district court's order compelling arbitration of the state and common law claims. Merrill Lynch cross-appealed the district court's denial of the motion to compel arbitration of the federal claims, and subsequently dismissed the same pursuant to stipulation. Investors' appeal of Order No. 1 is docketed in this court as No. 85–2622.

Following the Supreme Court's decision in *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987), Merrill Lynch filed a motion pursuant to Fed.R.Civ.P. 60(b)(6), asking the district court to reconsider its previous order partially denying arbitration. In view of *McMahon*, the district court found the case presented an "extraordinary situation" justifying relief under Rule 60(b)(6). By Order entered on August 27, 1987, the district court granted Merrill Lynch's motion and ordered to arbitration all Investors' federal claims arising under § 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 promulgated thereunder, along with all Investors' state and common law claims previously ordered to be arbitrated. The district court denied Merrill Lynch's motion to compel arbitration of Investors' federal claims arising under the Securities Act of 1933, even though Merrill Lynch had not requested such relief. Investors' appeal of Order No. 2 is docketed in this court as No. 87–2471.

In February 1988, Merrill Lynch filed a motion to compel Investors to arbitrate their claims arising under the Securities Act of 1933, which by this time were the sole remaining claims. By Order entered April 21, 1988, the district court ordered Investors to arbitrate their claims under the Securities Act of 1933 in conjunction with their claims under the Securities Exchange Act of 1934, and Rule 10b–5 promulgated thereunder, as well as their claims under state and common law. With the entry of this order, all of Investors' claims were subjected to arbitration. Investors' appeal of Order No. 3 is docketed in this court as No. 88–1797.

## I.  JURISDICTION

In two of the three appeals, Merrill Lynch raises jurisdiction as an issue on appeal. Citing *Pioneer Properties, Inc. v. Martin*, 776 F.2d 888, 892 (10th Cir.1985), Merrill Lynch argues in No. 85–2622 that the district court order staying all proceedings pending arbitration is not an appealable order. Citing *Quinn v. CGR*, 828 F.2d 1463 (10th Cir.1987), Merrill Lynch argues in No. 87–2471 that the district court's order enforcing the terms of an arbitration agreement and directing the parties to arbitrate their dispute is not a final appealable order. We are not persuaded that we lack jurisdiction. Because Order No. 3 terminated the judicial controversy, we have jurisdiction to hear the consolidated appeals.

▮ Ordinarily, an order compelling arbitration is not a final order under 28 U.S.C. § 1291. *Quinn*, 828 F.2d at 1465 (citing *Pioneer Properties*, 776 F.2d at 890). At the time of the first two appeals, this court did not have jurisdiction. The first two orders appealed by Investors ordered specified claims to arbitration and stayed the proceedings until the completion of arbitration. As of the entry of the first two orders, the district court made no findings permitting an appeal under Fed.R. Civ.P. 54(b), which states:

> When more than one claim for relief is presented in an action, ... the court may direct the entry of a final judgment as to one or more but fewer than all of the claims ... *only* upon an express determination that there is no just reason for delay *and* upon an express direction for the entry of judgment. In the absence of such determination and direction, any order ... which adjudicates fewer than all the claims ... shall not terminate the action as to any of the claims ... and the order ... is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

(Emphasis added.) With the entry of the third order, however, the district court ef-

fectively terminated the judicial controversy. Because the third order compelled arbitration of all remaining claims and the trial court did not retain jurisdiction, there was nothing left for the district court to adjudicate. When a district court has adjudicated all remaining outstanding claims before the appellate court acts to dismiss the appeal, we will consider the appeal on its merits rather than dismiss for lack of jurisdiction. *Lewis v. B.F. Goodrich Co.,* 850 F.2d 641, 645 (10th Cir.1988). We therefore have jurisdiction in these appeals.

## II. No. 85-2622

First we consider Investors' appeal of the order of the district court dated September 20, 1985, whereby it ordered arbitration of Investors' pendent state law claims, refused to order arbitration of the claims arising under the 1934 Securities Exchange Act, and stayed the proceedings pending completion of arbitration. Investors assert: (1) Investor Gracie Moore cannot be compelled to arbitrate because she did not sign a customer agreement; (2) the agreements to arbitrate cannot be enforced because they are contracts of adhesion; (3) the arbitration agreements were procured through fraud; (4) Merrill Lynch waived its right to arbitration; and (5) Investors should be allowed to proceed with their lawsuit for violations of federal securities law. We are not persuaded by Investors' arguments.

## A. Gracie Moore

█ Investors contend that the court cannot compel Gracie Moore to arbitrate her claims because she did not see or execute "the Agreement." Appellants' Brief at 4. We are unable to discern from the briefs and the record what Investors mean when they refer to "the Agreement." The complaint contains a claim by Gracie Moore for breach of contract, and the only contract referred to in the complaint is "a customer agreement." Complaint at 5. In her response to Merrill Lynch's motion to dismiss the complaint pursuant to Fed.R. Civ.P. 9(b), 12(b), and 12(e), Ms. Moore represented that she had "execute[d] an agree-ment authorizing Merrill Lynch ... to act as [her] broker." Brief in Opposition to Motion to Dismiss at 3. In Merrill Lynch's answer to the complaint, it admitted the execution of the agreement referred to in Investors' complaint. R.I, tab 30, Answer ¶ 11 at 2. In its counterclaim, Merrill Lynch alleged the execution by Ms. Moore of the Standard Option Agreement, and attached a copy thereto. Because the answer to the counterclaim was not designated as a part of the record, we do not know what facts, if any, Ms. Moore pled at that point. Merrill Lynch then filed its first motion to compel arbitration based upon the Standard Option Agreement. Motion to Compel Arbitration, Exhibit B. In her response to this motion, Ms. Moore, by affidavit, denied the execution of the Standard Option Agreement. Merrill Lynch thereupon filed a supplemental brief in support of its reply wherein it set forth the Customer Agreement executed by Gracie Moore. Ms. Moore responded with an affidavit stating she had never seen the document and the signature thereon was not hers. R.I, tab 43. In short, the case appears to present contradictory pleadings and inconsistent arguments by Investors.

Investors' lack of clarity, however, does not impair our ability to resolve the issue. Based upon the evidence, the district judge found that Investors, including Gracie Moore, executed both the Standard Option Agreements and the general Customer Agreements. The court further found that both of the agreements contained arbitration clauses. *See* fn. 1, *supra.* Investors do not argue the trial court's findings are clearly erroneous. They merely assert that arbitration is dependent upon the voluntary agreement of the parties and deny that Gracie Moore had ever seen the Standard Option Agreement. Appellants' Brief at 3-4. As Investors' brief is silent concerning the issue of whether or not Ms. Moore executed the Customer Agreement, we can only assume that Investors have abandoned this argument, and we must therefore conclude the trial court's findings concerning the Customer Agreement are correct.

We are left with an incomplete record and have no basis for a proper review of the trial court's factual determinations. We may not set aside trial court's findings on appeal unless they are clearly erroneous. *Equal Employment Opportunity Comm'n v. General Lines, Inc.*, 865 F.2d 1555, 1558 (10th Cir.1989). Findings are not to be determined clearly erroneous unless, after a review of the entire record, we are left with a definite and firm conviction that a mistake has been made. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 123, 89 S.Ct. 1562, 1576, 23 L.Ed.2d 129 (1969). In the instant case, the district court judge had before him copies of both of the agreements, each bearing the signatures of the Investors, including Gracie Moore. The record contains evidence to support the finding that the Investors each executed the Customer Agreement. If the error alleged is a factual error, Investors have the obligation to designate it as such. Investors bear the burden of persuasion that the trial court committed error, and as they have failed to allege or demonstrate error in the record they have failed to meet their burden.

### B. Contract of Adhesion

■ Investors next argue the agreement to arbitrate should not be enforced because "it is a contract of adhesion." Appellants' Brief at 4. Citing no cases holding that brokerage agreements are contracts of adhesion, Investors argue that the agreement is a form, boilerplate contract, drafted by Merrill Lynch, whose agents made no attempt to highlight the arbitration provision requiring arbitration. Investors further argue that even if they were aware of the arbitration provision, they had no real opportunity to negotiate the terms because signing the agreement was a prerequisite to doing business in the securities market. *Id.* at 5.

We are not persuaded by Investors' argument. First, we are not persuaded that the agreements herein are contracts of adhesion. Second, even if they were contracts of adhesion, we find no authority that arbitration clauses are unconscionable. In *Surman v. Merrill, Lynch, Pierce, Fenner & Smith*, 733 F.2d 59, 61 (8th Cir. 1984), the Eighth Circuit rejected the argument that three brokerage agreements were contracts of adhesion and that the arbitration clauses were therefore unenforceable. Although the opinion focuses more on the distinction between arbitrable and non-arbitrable claims, the court commented on the arbitration clauses which appear to be the same clauses used in the agreements herein.[2]

Appellees argue that the three brokerage agreements are contracts of adhesion and that the arbitration clauses are therefore unenforceable. When presented with a standardized contract of adhesion, a court may deny giving effect to an "unconscionable" clause therein. See 6A A. Corbin, *Contracts* § 1376, at 20–22 (1962). Thus appellees' argument is directed at the overreaching of the arbitration clause itself which is a matter for judicial determination. *But see Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 637 F.2d 391, 398 (5th Cir.1981) (investor's contentions of duress and unconscionability regarding standard brokerage agreements are to be decided by arbitrator not court). *There is certainly nothing inherently unfair about the arbitration clauses, and they are therefore valid and enforceable.* *Id.* at 61 n. 2 (emphasis added). *See also Schuster v. Kidder, Peabody & Co.*, 699 F.Supp. 271 (S.D.Fla.1988) (court rejected argument that customer agreements signed in relation to investment accounts were contracts of adhesion lacking mutuality of obligation).

Although Investors do not develop their argument regarding the unconscionable nature of the agreement as a whole or of the arbitration clauses specifically, the district

---

**2.** The arbitration clause in the standard investor-broker agreement stated in part: "It is agreed that any controversy between us arising out of your business or this agreement shall be submitted to arbitration." *Id.* at 60 n. 1.

The arbitration clause in the standard option trading agreement stated in part: "Any controversy between us arising out of such option transactions or this agreement shall be settled by arbitration only." *Id.* at 60 n. 1.

court addressed both notions, and correctly concluded:

> Plaintiffs' arguments that the agreements to arbitrate should be voided are unpersuasive. Plaintiffs have made only a conclusory allegation of fraud, and there appears no cogent reason to conclude that defendants have waived their right to arbitrate.... Plaintiffs' arguments that the arbitration clause was either not noticed or not explained to them is also unpersuasive. It is generally presumed that one who executes an instrument has read it and understands its contents. *Allis Chalmers Mfg. Co. v. Byers*, 184 Okl. 175, 88 P.2d 368 (Okla. 1939).

Order dated September 20, 1985, at 2–3. The mere fact that the contracts which the Investors signed were form or boilerplate contracts required by Merrill Lynch prior to entering the business relationship, is not sufficient to dissolve the terms thereunder.

### C. Fraud

■ Investors next assert Merrill Lynch induced the Investors to sign the agreements without disclosing the arbitration provision, and that such conduct amounts to constructive fraud. They base their argument on the fact that the Securities and Exchange Commission, in its Release No. 15984 (July 2, 1979), warned broker dealers that the use of form, boilerplate arbitration agreements that purport to bind customers to arbitrate all disputes, without disclosing the limited enforceability of such clauses in the context of federal securities law, violates the standards of fair dealing with customers. We note that Investors do not assert that Merrill Lynch violated any Securities and Exchange Commission Rule. They merely contend that failure to comply with the above release constitutes fraud.

The agreements clearly and unambiguously set forth the arbitration provisions. The record contains no evidence that Merrill Lynch failed to advise the Investors truthfully. The district court found the Investors had signed the agreements, and the law presumes that one has read that which he has signed. *Allis Chalmers Mfg.*

*Co. v. Byers*, 184 Okl. 475, 88 P.2d 368, 371 (1939). We are not prepared to hold on the basis of the undeveloped facts of this case that a violation of a standard of fair dealing with customers equates to fraud.

### D. Waiver of Right to Arbitration

Investors next assert that by attempting to resolve the dispute prior to suit, and by not demanding arbitration prior to suit, Merrill Lynch waived its right to arbitration. They further argue that by filing a counterclaim, engaging in discovery, and participating in the litigation by filing motions, Merrill Lynch waived its right to arbitration. We are unpersuaded by this argument.

■ Parties seeking to prove waiver of arbitration obligations bear a heavy burden; they must show substantial prejudice. *Sweater Bee by Banff, Ltd. v. Manhattan Indus., Inc.*, 754 F.2d 457, 463, 466 (2d Cir.), *cert. denied*, 474 U.S. 819, 106 S.Ct. 68, 88 L.Ed.2d 55 (1985); *Martin Marietta Aluminum, Inc. v. General Elec. Co.*, 586 F.2d 143, 146 (9th Cir.1978). "There is no set rule as to what constitutes a waiver or abandonment of the arbitration agreement; the question depends upon the facts of each case and usually calls for a finding by the trier of the facts." *Reid Burton Constr., Inc. v. Carpenters Dist. Council of S. Colorado*, 614 F.2d 698, 702 (10th Cir.), *cert. denied*, 449 U.S. 824, 101 S.Ct. 85, 66 L.Ed.2d 27 (1980); *Burton–Dixie Corp. v. Timothy McCarthy Constr. Co.*, 436 F.2d 405, 408 (5th Cir.1971). "Under the federal policy favoring arbitration, a party does not waive arbitration merely by engaging in action inconsistent with an arbitration provision. Moreover, inconsistent behavior alone is not sufficient; the party opposing a motion to compel arbitration must have suffered prejudice." *ATSA of California, Inc. v. Continental Ins. Co.*, 702 F.2d 172, 175 (9th Cir.1983) (citation omitted).

The key question is whether Investors suffered substantial prejudice by the delay in seeking arbitration. In their brief they argue that because there was a delay of almost a year in seeking arbitration the

parties engaged in expensive and time-consuming discovery, they retained counsel and dissipated their resources, and Merrill Lynch realized significant savings by delaying and protracting the resolution of these matters. Merrill Lynch responds by stating they filed their motion to compel arbitration at the earliest opportunity, simultaneously with their answer and counterclaim. They further state the motion was not filed until the Supreme Court decided *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), and only then were they entitled to arbitration; Investors initiated the discovery and Merrill Lynch has borne the time and expense of discovery; and Investors would have retained counsel to represent them in arbitration proceedings. Although the district court failed to make specific findings concerning this issue, we are not persuaded that Investors suffered substantial prejudice. Investors have failed to meet their burden.

Investors' final contention is that their litigation concerning violations of federal securities law should proceed. In light of our resolution of the issues remaining in the two consolidated appeals, we need not address this contention.

### III. No. 87–2471

Investors appeal the Order of the district court dated August 27, 1987, whereby it granted Merrill Lynch's motion to compel arbitration of the claims arising under the Securities Exchange Act of 1934. Although Merrill Lynch cross-appealed the district court's previous denial of the motion to compel arbitration of these claims, it dismissed its cross-appeal based upon a stipulation of the parties. Following the decision of the Supreme Court in *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987), Merrill Lynch filed a motion pursuant to Fed.R.Civ.P. 60(b)(6), asking the court to reconsider its previous judgment on the matter. The district court granted the motion.

**3.** Appellants do not argue that the district court

Citing *Ackermann v. United States*, 340 U.S. 193, 71 S.Ct. 209, 95 L.Ed. 207 (1950), and *Collins v. City of Wichita, Kan.*, 254 F.2d 837 (10th Cir.1958), Investors argue that Merrill Lynch may not voluntarily dismiss an appeal and then, because of a change in the law, move for the relief originally denied by the district court. Stated another way, Investors argue that a change in law is not a substitute for appeal and does not justify relief under Fed.R. Civ.P. 60(b)(6).[3] We reject Investors' contentions.

We review the district court's ruling on a motion for relief under Rule 60(b)(6) on an abuse of discretion standard, and absent such abuse of discretion, the district court's determination should not be disturbed. *Wilson v. Al McCord Inc.*, 858 F.2d 1469, 1478 (10th Cir.1988). In this circuit, a change in relevant case law by the United States Supreme Court warrants relief under Fed.R.Civ.P. 60(b)(6). *Pierce v. Cook & Co.*, 518 F.2d 720, 722–24 (10th Cir.1975), *cert. denied*, 423 U.S. 1079, 96 S.Ct. 866, 47 L.Ed.2d 89 (1976); *Professional Assets Mgmt., Inc. v. Penn Square Bank, N.A.*, 616 F.Supp. 1418, 1419–20 (W.D.Okla.1985). The district court did not abuse its discretion in ruling as it did on the motion.

### IV. No. 88–1787

Investors appeal the order of the district court dated April 21, 1988, whereby it ordered to arbitration the sole remaining claims made under the Securities Act of 1933. In this appeal Investors contend: (1) Merrill Lynch waived its right to compel arbitration; and (2) under *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), the claims are not subject to arbitration. We find no merit in Investors' arguments.

First, Investors failed to assert prejudice other than that which we rejected in No. 85–2622. Second, in *Rodriguez de Quijas v. Shearson/American Express, Inc.*, — U.S. ——, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989), the Supreme Court held that a predispute agreement to arbitrate claims un-

wrongfully decided this issue under *McMahon*.

der the Securities Act of 1933 is enforceable, thereby overruling *Wilko*.

The decisions of the district court are AFFIRMED.